UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONGGUAN SAIEN CHUANGKE TECHNOLOGY CO. LTD., <br><br> *Plaintiff*, <br><br> v. <br><br> SHENZHEN HUAMINGJUN RUBBER CO. LTD., ET AL., <br> *Defendants*. | Case No. 1:24-cv-08111 <br><br> Consolidated with Case No. 1:24-cv-07133 |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF**

Defendants Shenzhen Huamingjun Rubber Co. Ltd. ("SHR") and the Internet Stores 1-45 ("Internet Stores") (collectively, "Defendants") file this response in opposition to Plaintiff Dongguan Saien Chuangke Technology Co. Ltd.'s ("Plaintiff") motion for injunctive relief (Dkt. No. 3).[1]

---

[1] It is Defendants understanding that while the motion was styled as an *ex parte* temporary restraining order, due to Defendants appearance and participation, the motion is to be treated as a *de facto* preliminary injunction motion.

**I.     INTRODUCTION**

Plaintiff has failed to establish a likelihood of success on the merits. Defendants raise substantial questions as to the issues of patent validity and infringement. To begin, the Patents are likely invalid in view of the cited prior art herein. Secondly, many of the accused products are clearly dissimilar from the patented designs. Moreover, Plaintiff has failed to show that any of the Defendants actually use the Trademark. Finally, the balance of harms favors Defendants, especially in light of the excessive asset restraint, and the public interest factor is neutral. For these reasons, Plaintiff's motion for injunctive relief should be denied.

**II.    PROCEDURAL BACKGROUND**

In response to several Amazon infringement complaints lodged by Plaintiff, Defendant SHR filed a declaratory judgment action against Plaintiff (Case No. 1:24-cv-07133). Plaintiff responded by filing this infringement action and promptly sought a temporary restraining order. The two actions have since been deemed related and consolidated.

**III.   FACTUAL BACKGROUND**

    **A.     Defendant SHR and the Internet Stores**

Established in 2014, SHR initially focused on silicone products and smart wearable accessories. On or around May of 2022, based on customer feedback, SHR identified a market demand for reusable water balloons made of silicon. SHR identified potential choking risks, such as the exposed small magnets. Believing it could improve upon these deficiencies, SHR set out to redesign and enhance the reusable water ballon products on the market.

SHR's optimizations and improvements have focused primarily on enhancing the structure and performance of the magnets and magnet slots. These enhancements make the magnets less likely to fall out and therefore less accessible to children. Additionally, the silicone components

are ultra tear-resistant, aimed at minimizing safety risks for children. In fact, SHR sought and was granted United States Patent No. 11,786,835 for its novel and useful reusable water balloon.

In response to customer and market demands, SHR manufactures various shapes of its reusable water balloons, including a standard round shape, octopus shape, grenade shape, ice-cream shape, bomb shape, space capsule shape, pumpkin shape, avocado shape, diamond shape, and star shape, as well as special editions with unique patterns printed on the surface. As further detailed herein, due to differences in structural design and appearance, the SHR reusable silicone water balloons are distinct from other products on the market, including those of Plaintiff.

### B. Plaintiff and the SOPPYCID Brand

Plaintiff is a Chinese manufacturer and merchant of reusable water balloons that embody and practice the designs of United States Design Patent Nos. D1,030,929 ("the '929 Patent") and D1,034,861 ("the '861 Patent") (collectively "Patents"). Plaintiff is the applicant and assignee of record of the Patents. The '929 Patent claims the ornamental design for a spherical toy water ball, as shown and described. Similarly, the '861 Patent claims the ornamental design for a toy water ball, as shown and described. Plaintiff claims that the Patents are entitled to the December 14, 2021 effective filing date of Application No. 17/549,920. At least with regard to the '861 Patent, the December 14, 2021 priority date is highly questionable because the '861 Patent is a continuation-in-part of the application filed that date. Therefore, by definition, the '861 Patent has new subject matter added that is not supported in the December 14, 2021 filing. As such, the '861 Patent has subject matter subject to the February 22, 2024 filing date, thereby opening the door to over two years of prior art. Plaintiff's products are sold under United States Trademark Registration No. 6850955 for "SOPPYCID" ("Trademark").

**III.    AUTHORITIES**

"An equitable, interlocutory form of relief, 'a preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it.'" *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of United States of Am., Inc.*, 549 F.3d 1079, 1085 (7th Cir. 2008); *see also Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1044 (7th Cir. 2017) ("A preliminary injunction is an extraordinary remedy."). "It is never awarded as a matter of right." *Whitaker*, 858 F.3d at 1044.

In analyzing whether a preliminary injunction is justified, a court asks whether the party seeking the injunction has shown, as a threshold matter, that: (1) "its claim has some likelihood of succeeding on the merits" and (2) that, absent a preliminary injunction, it will suffer irreparable harm" for which "traditional legal remedies would be inadequate." *Valencia v. City of Springfield, Illinois*, 883 F.3d 959, 965 (7th Cir. 2018) (quotation marks and citation omitted). "If these threshold factors are met, the court proceeds to a balancing phase, where it must then consider" the balance of harms and the public interest. *Cassell v. Snyders*, 990 F.3d 539, 545 (7th Cir. 2021) (citations and quotation marks omitted).

**IV.    ARGUMENTS**

    **A.    No Likelihood of Success on the Merits**

        *i.    The Design Patent Infringement Claims*

To establish a likelihood of success on the merits, the Federal Circuit requires that a patent holder "show that it will likely prove infringement of the asserted claims and that its infringement claim will likely withstand the alleged infringer's challenges to patent validity and enforceability." *Metalcraft of Mayville, Inc. v. The Toro Co.*, 848 F.3d 1358, 1364 (Fed. Cir. 2017). Where an accused infringer "raises a substantial question concerning either infringement or validity, *i.e.*,

asserts an infringement or invalidity defense that the patentee cannot prove lacks substantial merit, the preliminary injunction should not issue." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350-51 (Fed. Cir. 2001) (internal quotation marks omitted). Here, both validity and infringement are tenuous at best, rendering Plaintiff's likelihood of success on the merits seriously lacking.

1. The Patents Are Likely Invalid in View of the Prior Art

Patent validity is governed in part by 35 U.S.C. §§ 102 and 103. Here, Defendants cite to numerous prior art references which invalidate the Patents under § 102. All prior art references cited herein predate the claimed effective filing date of the Patents, December 14, 2021.

For example, the claimed designs of the Patents were in public use, on sale, or otherwise available to the public before the effective filing date of the claimed inventions. Specifically, the claimed design of the Patents was fully disclosed on Amazon by seller FEECHAGIER SDFLAYER (ASIN No. B0B2R4B26C) ("Feechagier") (Exhibit A). The Feechagier reference has numerous customer reviews that pre-date the effective filing date of the Patents. Exhibit A at 5.



| *Patented Designs* | *Feechagier Reference* |
|---|---|
| (Dkt. Nos. 3-59 at 4 & 3-60 at 4) | (Ex. A at 2) |

Similarly, the claimed designs of the Patents were fully disclosed on Amazon by seller Ya Cheng Feng (ASIN No. B0CCCY67FY) ("Feng") (Exhibit B). The Feng reference has at least one customer review that pre-dates the effective filing date of the Patents. Exhibit B at 6.



| *Patented Design* | *Feng Reference* |
|---|---|
| (Dkt. Nos. 3-59 at 4 & 3-60 at 4) | (Ex. B at 2) |

In its motion, Plaintiff does not argue that the Feechagier and Feng references do not disclose the claimed designs of the Patents. Instead, Plaintiff attacks the Feechagier and Feng references as not prior art. Dkt. No. 3 at 8-9. Specifically, Plaintiff relies on the self-serving and unsubstantiated declaration of Lixiang Liao, manager of Plaintiff and purported inventor of the Patents, who states that the Feechagier and Feng references were not listed on Amazon until after the effective filing date. Dkt. No. 3-58 at ¶¶ 10 & 12. For example, Liao states that he has access to when the Feechagier and Feng references were first listed on Amazon, yet files no evidentiary support in corroboration. *Id.* The fact remains that both the Feechagier and Feng references contain customer reviews from verified purchasers that predate the effective filing date. Plaintiff offers no valid explanation as to how verified customers posted reviews on products that were supposedly not yet even listed beyond that "sellers sometimes import old reviews into new Amazon listings for new products." Dkt. No. 3-58 at ¶ 11. There is no evidence that the Feechagier and Feng reference imported old reviews or if importing old reviews is even possible. Plaintiff's statements

to that effect are self-serving, speculative, and unfounded. Regardless, the Feechagier and Feng references raise a substantial issue as to the validity of the Patents.

Plaintiff further attacks the Feechagier and Feng references as "insufficient evidence by itself to constitute proof that a product was publicly available or on sale prior to the effective filing date of a patent." Dkt. No. 3 at 9. This could not be further from the truth. Patent examiners themselves during prosecution routinely and often cite to non-patent literature documents as prior art, including internet webpages such as Amazon listings. In fact, in both the prosecutions of the Patents, extensive webpages were cited and considered by the examiners as prior art. *See* Exhibit C at Non-Patent Literature Documents. If the USPTO relies on non-patent literature webpages as prior art, there is no reason this Court should not follow suit. *See Heifeng Zhizao (Shenzhen) Tech. Co. v. P'ships & Unincorporated Ass'n Identified on Schedule "A"*, No. 23 CV 3301, 2024 U.S. Dist. LEXIS 1817 at *6 (N.D. Ill. 2024) ("the United States Patent and Trademark Office... initially rejected the application for the '900 Patent after finding the claimed design was anticipated by an Amazon listing").

Plaintiff's reliance on *Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331, 1349 (Fed. Cir. 2016) for the bold proposition that "bare webpages" should be rejected as prior art evidence is misleading and misplaced. In *Blue Calypso*, the issue was if a report available via a hyperlink on a personal webpage qualified as a printed publication under 35 U.S.C. § 102. There the issue was of sufficient public accessibility to the report to qualify as a printed publication. Here, in contrast, the Court need not even reach the issue of public accessibility of the Feechagier and Feng references as printed publications (still the references most certainly are publicly accessible) because the references are not relied on as printed publications but are rather relied on under the on-sale bar of 35 U.S.C. § 102. Here, the verified customer reviews tend to show that the inventions

were in fact on sale and ready for patenting at a time that predates the effective filing dates. Nothing more is needed to qualify as prior art. *Helsinn Healthcare S.A. v. Teva Pharm. USA, Inc.*, 586 U.S. 123, 125 (2019) ("More than 20 years ago, this Court determined that an invention was 'on sale' within the meaning of an earlier version of § 102(a) when it was the subject of a commercial offer for sale and ready for patenting." (citation and internal quotations omitted).

In view of the prior art references cited herein it is unlikely that Plaintiff's infringement claims will be able to withstand Defendants' patent validity challenges. Defendants have therefore raised a substantial question concerning the validity of the Patents.

### 2. At Least the '929 Patent is Invalid for Failure to Name all Inventors

Failure to name all true inventors to a patent will invalidate the patent. *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1350 (Fed. Cir. 1998). "Accordingly, if nonjoinder of an actual inventor is proved by clear and convincing evidence, a patent is rendered invalid." *Id.* at 1349. But a patent will not be invalid if it can be redeemed under the "savings provision" in 35 U.S.C. § 256, which is designed to prevent patent invalidation because of failure to list all true inventors. *Id.* at 1350. Here, according to a Request for Certificate of Correction filed by Plaintiff for the '929 Patent, inventor Lixiang Liao was not properly named before issuance. Exhibit D at 2. Critically, the Request for Certificate of Correction adding Lixiang Liao as an inventor was denied by the USPTO. *Id.* at 7. Therefore, it is unlikely that the '929 Patent can be redeemed. The inventorship issue as to the '929 Patent raises another substantial question of validity.

### 3. There is Clearly No Infringement of Certain Accused Products

A design patent is infringed if an ordinary observer, when comparing the two designs in context of the prior art, would think that the accused design is substantially the same as the patented design. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008) (*en banc*). The

test considers "both the perspective of the ordinary observer and the particular novelty in the claimed design." *Id*. at 671. In *Egyptian Goddess*, the Federal Circuit discussed novelty, explaining that "when the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art." *Id*. "Where the claimed and accused designs are sufficiently distinct and plainly dissimilar, the [plaintiff] fails to meet its burden of proving infringement as a matter of law." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015) (internal quotation marks omitted). Here, as shown in the exemplary claim charts of Exhibits E and F, the patented designs and the designs of the following accused products are clearly dissimilar if not entirely distinct. *See* Exhibits E & F.



| *Patented Designs* | *Accused Products* |
|---|---|
|  | Hiliop Reusable WB Direct |
| (Dkt. Nos. 3-59 at 4 & 3-60 at 4) | (Ex. G at 2) |

(Exhibit E)

Focusing on the overall visual impression that the ornamental features of the patented designs create, it is obvious that the accused products shown above embody an overall effect that is clearly dissimilar from that of the patented designs and thus do not cause confusion in the marketplace. Therefore, Plaintiff is unlikely to prove infringement as to the accused product shown above.

- 8 -

### ii. The Lanham Act Trademark Claim

To succeed on its federal trademark infringement claim, Plaintiff must establish that (1) its "SOPPYCID" trademark is protectable; and (2) there is a likelihood of confusion as to the origin of Defendants' products. *International Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1084 (7th Cir. 1988). Here, Plaintiff has failed to establish a likelihood of confusion because Defendants do not actually use the Trademark in commerce.

It is irrefutable that none of the Defendants use the Trademark in their listings, packaging, or on the goods themselves. Therefore, there is no point-of-sale or post-sale confusion. Instead, Plaintiff alleges that Defendants embed the Trademark as a keyword search term for their Amazon listings resulting in initial interest confusion. Dkt. No. 3 at 9-10. In support, Plaintiff relies on the Rosenblum declaration (Dkt. No. 3-1) and Exhibits 48-50 (Dkt. Nos. 3-49 to 3-51). Rosenblum explains that he ran a search using the term "SOPPYCID" on Amazon. Dkt. No. 3-1 at ¶¶ 8-10. He further states that several of the search results "appear to be the same Internet Stores listed in Schedule A." *Id*. Based on this evidence, it is not definitive if any of the search results actually match to any of the Internet Stores. In fact, Plaintiff fails to match any of the search results to any of the Internet Stores. For example, in Exhibit 48 of the motion, none of the search results marked as "KNOCKOFF" are readily attributable to any of the Internet Stores. Dkt. No. 3-49. The same can be said of Exhibits 49-50 of the motion. Dkt Nos. 3-50 to 3-51. Plaintiff fails to present creditable evidence proving that Defendants actually used the term "SOPPYCID." Instead of burdening the court with tens of declarations from all Defendants, Defendants present the declarations of Zhengliang Wu and Erjun Che as examples confirming that their Internet Stores have not paid for the search term "SOPPYCID" with evidence of what search terms are actually paid for. *See* Exhibits H and I.

The Rosenblum declaration further states that he ran a term search and that "the term 'SOPPYCID' was present in all 80 webpages." Dkt. No. 3-1 at ¶ 11. To begin it is unclear which of the 80 webpages searched are attributable to the only 45 Internet Stores. Still, the term "SOPPYCID" is only present in the webpages of the Internet Stores as advertisements for other listings. It is indisputable that none of the listings of the Internet Stores actually use the Trademark. For example, in the webpages of the listings attributable to the Internet Stores found in Exhibits 1-45 of the motion, a simple Ctrl-F search plainly shows that the term "SOPPYCID" is strictly found in advertisements for other listings placed there by Amazon. Dkt. Nos. 3-2 to 3-46.

Overall, Plaintiff's evidence of alleged use of the Trademark by Defendants is speculative and unfounded. Plaintiff fails to adequately point to any actual use of the Trademark by Defendants in any listings attributable to Defendants. Further, Plaintiff fails to adequately link the search results to any of the named Internet Stores. Still, Defendants present declaration testimony of Wu and Che stating that their Internet Stores have not paid for the search term "SOPPYCID." Because Plaintiff has not shown that Defendants actually use the Trademark, there simply cannot be any consumer confusion.

### B. No Irreparable Harm

"A party seeking a preliminary injunction must establish that it is *likely* to suffer irreparable harm without an injunction." *Koninklijke Philips N.V. v. Thales DIS AIS USA LLC*, 39 F.4th 1377, 1380 (Fed. Cir. 2022) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)) (emphasis in original).

Because Plaintiff is so unlikely to succeed on the merits of its claims, this Court need not evaluate the irreparable harm factor. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of Am. Inc.*, 549 F.3d 1079 (7th Cir. 2008) ("If the court determines that the moving

party has failed to demonstrate any one of these three threshold requirements, it must deny the injunction."). Nevertheless, Plaintiff has likewise failed to establish a likelihood of suffering irreparable harm.

To establish irreparable harm, Plaintiff relies on purported "price erosion, loss of goodwill, and damage to reputation." Dkt. No. 3 at 17. Specifically, Plaintiff relies on the self-serving and unsubstantiated Liao declaration. Dkt. No. 3-58. Therein Liao estimates, with no substantiating evidence, that Plaintiff has "lost approximately $280 million due to sales of knock-offs..." *Id.* at ¶ 15. Liao further generalizes, with no substantiating evidence, that Plaintiff has had "to lay off employees and reduce pricing..." *Id.* Plaintiff provides no supporting evidence whatsoever for these generalized claims, thereby failing to establish irreparable harm. *Takeda Pharms. U.S.A., Inc. v. Mylan Pharms. Inc.*, 967 F.3d 1339, 1349 (Fed. Cir. 2020) ("a bare assertion of irreparable harm is never sufficient to prove such harm or justify the extraordinary remedy of a preliminary injunction"). In *Takeda*, the Federal Circuit Court of Appeals found that the plaintiff's "nonspecific and unsupported assertion that [defendant]'s sales 'likely will cause' irreparable harm falls far short of establishing that irreparable harm has occurred, or will likely occur, absent a preliminary injunction." *Id*. The same finding is required here.

Liao goes on to state that "[k]nock-offs generally have inferior quality and safety issues..." *Id*. at ¶ 17. Plaintiff again presents no evidence that any of the accused products are in fact inferior or carry increased safety concerns. To the contrary, many of the accused products have quality customer reviews and increased anti-choking measures. As just one example, the accused product of the Internet Store known as Hiliop Reusable WB Direct has a 4.7 out of 5 star customer rating and practices the improved safety measures of Defendant's utility patent. Exhibit G at 7-9, 14, 19-20, 26-27, 33-35; *see also* Dkt. Nos. 3-2 to 3-46 at Customer Reviews.

Plaintiff further relies on Defendants status as foreign entities to speculate that any monetary judgment is likely uncollectable. Dkt. No. 3 at 17. Such an argument presupposes an award of damages, which is unlikely given Plaintiff's unlikeliness to succeed on the merits outlined above. Moreover, there is no evidence that Plaintiff is in compliance with the patent marking statute of 35 U.S.C. § 287 or the trademark marking statute of 15 U.S.C. § 1111. To the contrary, Plaintiff's website fails to provide any notice of any patents or trademarks. *See* Exhibit J. Plaintiff's failure to mark its products in accordance with the applicable statutes bars Plaintiff from recovering any pre-notice damages. Nevertheless, Defendants filing of the related action and prompt appearance in this action with counsel tends to render any fears of an uncollectable award purely speculative. Still, Plaintiff has failed to articulate and adduce proof of actual or imminent harm which cannot otherwise be compensated by monetary damages via an award of a reasonable royalty or profits under the respective statutory schemes.

### C. Balance of Equities Favor Defendants

At the balancing phase, a court must consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm Plaintiff will suffer if relief is denied. *Cassell*, 990 F.3d at 545. Because Plaintiff has failed to meet the threshold factors above, this Court need not enter the balancing phase of the analysis. Nevertheless, the balance of equities favor Defendants.

Here, since Plaintiff is unlikely to succeed on the merits, under the sliding scale approach, the balance of harms must heavily weigh in Defendants' favor. *GEFT Outdoors, LLC*, 922 F.3d at 364. Plaintiff fails to meet that burden. The preliminary record shows that Plaintiff has failed to comply with the applicable marking statutes thereby failing to provide notice to Defendants of their intellectual property rights. Further, Defendants promptly filed the related declaratory

judgment action right after the Patents issued in June and July 2024, respectively. In this regard, Defendants should be afforded considerable equitable considerations as innocent infringers.

Finally, the relief sought by Plaintiff would bring a complete standstill to Defendants's business including a draconian asset restraint. Plaintiff has not shown that it will suffer greater harm if injunctive relief is denied.

### E. Public Interest is Neutral

At the balancing phase, a court must consider the public interest. *Cassell*, 990 F.3d at 545. Because Plaintiff has failed to meet the threshold factors above, this Court need not enter the balancing phase of the analysis. Nevertheless, the public interest is neutral.

Plaintiff argues that an injunction would serve "the public interest by enforcing valid patents and preventing consumer confusion." Dkt. No. 3 at 18. Such an argument ignores the substantial question of validity raised by Defendants herein. Moreover, Defendants have shown that there is no likely consumer confusion because Defendants are not actually using the Trademark. Certainly the public interest is not served by enforcing invalid patents. *See Dun & Bradstreet, Inc. v. Walter*, No. 90 C 5577, 1990 U.S. Dist. LEXIS 15446 at *12 (N.D. Ill. 1990) ("The issuance of an injunction that may produce competitive injury does not serve the public interest where there is no reasonable probability of future infringement.").

Although the public has an abstract interest in protecting rights secured by valid patents, the focus of the district court's public interest analysis should be whether the public has some critical interest in the specific case that would be injured by the grant or denial of preliminary relief. *Hybritech, Inc. v. Abbott Labs.*, 849 F.2d 1446, 1458 (Fed. Cir. 1988). Thus, the public interest in the enforcement of valid patents, taken alone, does not skew this factor toward the patent holder. *Id*. In this case, there is no such critical public interest. Therefore, this factor is neutral.

### F. An Asset Restraint is Not Warranted

Plaintiff requests a total asset restraint of Defendants' Amazon accounts "to avoid impairment of Plaintiff's right to an equitable accounting of Defendants' profits..." Dkt. No. 3 at 19. For one, given Plaintiff's failure to comply with the applicable marking statutes, Plaintiff's potential recovery are greatly reduced to the period of actual notice: June 2024 to present for the Patents and September 2024 to present for the Trademark. It makes little to no sense to completely restrain Defendants' financial accounts, which contain comingled revenues from the sale of non-accused products, to support such an accounting. Still, an accounting can be done without a freeze.

At the heart of the requested asset restraint is Plaintiff's unfounded fear that Defendants will move any funds beyond the reach of this court, rendering Defendants effectively judgment proof. Dkt. No. 3 at 19. As discussed herein, Defendants filing of the related action and prompt appearance in this action with counsel tends to render any fears of an uncollectable award purely speculative. Plaintiff argues that it is "common for courts to freeze Defendants' online accounts in so called 'Schedule A' cases." *Id*. However, in most "Schedule A" cases, the requests for an asset restraint are *ex parte*, which is an important distinction to be made with this case. Overall, there is no basis for such an excessive asset restraint in this case.

### G. Expedited Discovery is Not Warranted

Plaintiff requests expedited discovery to "discover bank and payment system accounts Defendants use for their sales operations..." Dkt. No. 3 at 20. Because Defendants have appeared in this action, there is no reason that Plaintiff's discovery requests cannot wait until after the parties conduct a Rule 26 conference. Again, Plaintiff raises unfounded concerns of Defendants disappearing into the night which are largely diminished here because this action is no longer *ex parte*. Defendants request that any discovery be made during the applicable discovery period.

### H. A Significant Bond is Needed

"The appropriate amount of the bond is subject to the court's discretion." *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 910 (N.D. Ill. 2015). "[W]hen setting the amount of security, district courts should err on the high side." *Mead Johnson & Co. v. Abbott Lab'ys*, 201 F.3d 883, 888 (7th Cir. 2000). Plaintiff request "a bond of no more than ten thousand U.S. dollars ($10,000.00)." Dkt. No. 3 at 21. Given the glaring holes in Plaintiff's infringement claims, the large number of Defendants in this case, and the potential damages Defendants may incur under any injunction order, the proper bond, if necessary, should be determined after an accounting and evidentiary hearing.

## V. CONCLUSION

Plaintiff has failed to establish the threshold factors of success on the merits and irreparable harm. The Patents are likely invalid and there is clearly no infringement as to certain accused products. Any claims of likely irreparable harm are unsupported by any evidence. For these reasons, the motion should be denied.

DATED: October 2, 2024                    Respectfully submitted,

                                          By: */s/ Nicholas Najera*

                                          Timothy T. Wang
                                          Texas Bar No. 24067927
                                          twang@nilawfirm.com
                                          Nicholas Najera
                                          Texas Bar No. 24127049
                                          nnajera@nilawfirm.com

                                          NI, WANG & MASSAND, PLLC
                                          8140 Walnut Hill Ln., Ste. 615
                                          Dallas, TX 75231
                                          Tel: (972) 325-2220
                                          Fax: (972) 314-0900

                                          *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2024, I electronically filed the foregoing document with the clerk of the court for the United States District Court, Northern District of Illinois, Eastern Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

                                          */s/ Nicholas Najera*
                                          Nicholas Najera