UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONGGUAN SAIEN CHUANGKE TECHNOLOGY CO. LTD., <br> Plaintiff <br><br> v. <br><br> SHENZHEN HUAMINGJUN RUBBER CO. LTD., and INTERNET STORES 1-45 Identified in Schedule A, <br> Defendants | No. 24-cv-08111 <br><br> Judge Jeremy C. Daniel |

## ORDER

The plaintiff's motion for a preliminary injunction [2] is granted in part and denied in part. The Court will enjoin sales of the accused products but will not restrain assets or order expedited discovery. The plaintiff shall submit a proposed order, consistent with this signature order, to the Court's proposed order inbox on or before November 21, 2024. The defendants may file a supplemental brief (not to exceed five pages, excluding supporting materials) addressing bond. The plaintiff may file a five-page response. The defendant's brief is due on or before November 25, 2024; the plaintiff's response is due on or before December 4, 2024.

## STATEMENT

<u>Background</u>. Plaintiff Dongguan Saien Chuangke Technology Co. Ltd. filed a complaint alleging design patent infringement, trademark infringement, and false designation of origin against Shenzhen Huamingjun Rubber Co. Ltd. and forty-five internet stores. (R. 1.) The plaintiff now seeks to enjoin the defendants alleged infringement of U.S. Design Patent Nos. D1,030,929 and D1,034,861 and the defendants alleged Lanham Act violations related to the plaintiff's "SOPPYSID" mark. The '929 patent claims "the ornamental design for a spherical toy water ball," show below:



FIG. 1     FIG. 2

(R. 1-1.) The '861 patent claims "the ornamental design for a toy water ball," shown below:





FIG. 1     FIG. 2

(R. 1-2.)

2

Legal standard. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *ABC Corp. I v. P'ship & Unincorporated Associations Identified on Schedule "A"*, 52 F.4th 934, 941 (Fed. Cir. 2022).

Likelihood of success – patent infringement. The plaintiff has shown a likelihood of success on the merits of its infringement claim. "In order to establish design patent infringement, a plaintiff must show that 'an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design.'" *ABC Corp. I*, 52 F.4th at 938. Here, the plaintiff set forth a chart showing the accused products sold by each of the forty-five internet stores, all of which are purportedly manufactured by defendant Shenzhen. (R. 3-48.) Nearly all of the products shown in the chart are round objects split in the middle by two prominent rings attached to each other. That is what the asserted patents claim, toy water balls separated in the middle by two prominent rings.

One exception is Defendant No. 41, whose top half is round but whose lower half has a flattened bottom. But the rings separating the two halves remain prominent. The defendants argue this product, and several other products offered by the defendants, do not infringe the asserted patents. While this may be true for the '929 patent, which limits the claim to a "spherical toy water ball," the '861 patent does not limit the shape of the claimed "toy water ball." *See Curver Luxembourg, SARL v. Home Expressions Inc.*, 938 F.3d 1334 at 1340 (Fed. Cir. 2019)("[W]e hold that claim language can limit the scope of a design patent where the claim language supplies the only instance of an article of manufacture that appears nowhere in the figures.)" Sports such as football and rugby show that not all balls are round. As for the other products identified by the defendants in (R. 19-5) and (R. 19-6), those are not the products at issue.

The defendants also challenge the validity of the asserted patents. The defendants argue that two references have customer reviews on Amazon that predate the effective filing date of the asserted patents. (R. 19 at 4-5.) According to the defendants, this means that the on-sale bar invalidates the asserted patents under 35 U.S.C. § 102(a)(1). But the defendants have not produced competent evidence to show that the two references they cite were actually on sale prior to the effective filing date of the asserted patents, which the parties identify as December 14, 2021. The Feechagier reference reports a "Date First Available" of June 4, 2022. (R. 19-1.) This casts doubt on reviews from unknown sources that predate the "Date First Available" that the defendants cite as prior art. Perhaps someone purchased the product elsewhere, saw it listed on Amazon, and shared their thoughts. Perhaps not. Without a declaration from the individual who posted the review, or without information from Amazon explaining the reference, there is no way to evaluate the reference for the purpose offered by the defendants. The same is true for the Feng reference. Though

3

the reference submitted by the defendants does not show the "Date First Available," (*see* R. 19-2), the plaintiff provides that information. (R. 3-58 ¶12.)

The defendants also contend that the '929 patent fails to name all inventors because Lixiang Liao is not named as an inventor. (R. 19 at 7.) But the U.S. Patent and Trademark Office has issued a certificate of correction that names both Yunfeng Chen and Lixiang Liao as inventors. This renders the defendants' argument null.

Likelihood of success – Lanham Act. The plaintiff has not shown a likelihood of success on the merits on its Lanham Act claim. The plaintiff's infringement theory rests on "the embedding [of] Plaintiff's trademark SOPPYCID in their websites." (R. 3 at 9.) According to the Rosenblum declaration, a legal assistant searched Amazon for "SOPPYCID" and received results that included the defendants. (R. 3-1 ¶¶ 8-10.) That legal assistant also inspected each of the webpages returned by the search and confirmed that the term "SOPPYCID" was present on all of them. (R. 3-1 ¶11.) What is missing is any evidence attributing these "uses" of the SOPPYCID mark to the defendants. This was present in the cases cited by the plaintiff. *Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 126 (2d Cir. 2009) ("In addition to AdWords, Google also employs Keyword Suggestion Tool, a program that recommends keywords to advertisers to be purchased."); *Morningware, Inc. v. Hearthware Home Prod., Inc.*, 673 F. Supp. 2d 630, 633 (N.D. Ill. 2009)("Hearthware has used Morningware's trademark, or variations of Morningware's trademark, as a keyword in Google's AdWords program."). Here, the plaintiff has shown what happens when one searches SOPPYCID on Amazon. The plaintiff has not shown that the defendants caused that to happen, which is their burden. Because it is the plaintiff's burden to show a likelihood of success on the merits, the plaintiff's arguments that 43 of the defendants have not shown that they have not paid for the SOPPYCID search term and have not explained how their stores appear in "SOPPYCID" search results are unavailing. (*See* R. 20 at 11.)

Irreparable harm. The plaintiff has shown that it will likely suffer irreparable harm due to the defendants' design patent infringement. The plaintiff claims that it has expended "substantial time, money, and other resources in advertising, promoting and marketing" products covered by the asserted patents. (R. 3-58 ¶ 16.) The plaintiff further claims that it lost approximately $280 million in sales to unlawful competitors, including the defendants, and has had to lay off employees and reduce its pricing to compete with knockoffs. (*Id.* ¶ 15.) Contrary to the defendants' argument, (R. 19 at 11), these statements, provided in a sworn declaration, constitute evidence that substantiates the plaintiff's claims of irreparable harm. Both parties were offered the opportunity to request an evidentiary hearing on this motion. Neither party took advantage of that opportunity. So neither party can complain about "self-serving" testimony when they passed on the opportunity to test that testimony through cross examination. The record before the Court consists of the declarations and exhibits the parties submitted. That record shows that the plaintiff will likely suffer irreparable harm in the absence of a preliminary injunction. *See*

*Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1152 (Fed. Cir. 2011)("The record here contains undisputed evidence of direct competition in each of the market segments identified by the parties. Bosch also introduced unrebutted evidence of loss of market share and access to potential customers, as well as Pylon's inability to satisfy a judgment."). And that record differs from the record in *Takeda Pharms. U.S.A., Inc. v. Mylan Pharms. Inc.*, 967 F.3d 1339, 1349 (Fed. Cir. 2020), where the party seeking the injunction primarily relied on a stipulation of irreparable harm that did not apply under the circumstances in that case.

Balance of equities. The balance of equities favor the plaintiff. The plaintiff is correct that courts should not reward infringing conduct by allowing the continued sale of the accused products. This does not change just because the defendants filed a declaratory judgment shortly after the asserted patents issued. At this point, the asserted patents are presumed valid and infringement, "innocent" or not, should not continue when the plaintiff has established a likelihood of success on the merits and that it will likely suffer irreparable harm.

Public interest. The Court agrees with the plaintiff that the public interest favors the enforcement of patent rights. The defendants rely on their invalidity arguments to undercut this notion, which has no effect here given the Court's treatment of those invalidity arguments above.

Asset restraint. The plaintiff seeks an immediate order freezing the assets in the defendants' Amazon accounts and any assets located in the United States. The plaintiff's concern stems from the defendants moving assets overseas to prevent the plaintiff's collection of any judgment the plaintiff may obtain. While an asset restraint is available because the plaintiff seeks equitable monetary relief, the Court agrees with the defendant that the need for an asset restraint is not present here. This case deviates from the typical "Schedule A" case. For one, the defendants filed a declaratory judgment before the plaintiff filed this suit. In a Schedule A case, plaintiffs, tend seek an asset restraint through an *ex parte* temporary restraining order before the defendants know about the lawsuit. This purportedly prevents defendants from draining their accounts, shutting down their webstore, and opening a new webstore upon receiving process. Here, the defendants have appeared and even initiated their own declaratory judgment action. This sets this case apart from a typical Schedule A case. Moreover, enjoining sales of the accused products addresses the plaintiff's principal concerns here—loss of market share to knockoffs. Further, the plaintiff did not respond to the defendant's "marking" argument, which the Court finds persuasive because, if proven, it limits the amount of damages the plaintiff may recover.

Expedited discovery. Because the Court has denied the plaintiff's request for an asset restraint, the Court also denies the plaintiff's request for expedited discovery as the justification for expedited discovery was to implement the asset restraint.

Bond. The Court will set the initial bond at $10,000. The defendants may file a supplemental brief (not to exceed five pages, excluding supporting materials) addressing bond. The plaintiff may file a five-page response. The defendant's brief is due on or before November 25, 2024; the plaintiff's response is due on or before December 4, 2024.

Date: November 18, 2024

JEREMY C. DANIEL
United States District Judge